UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HORACE FELIX, | No. CV 05-8917-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 28, 2005, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on January 18, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 5, 2006, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on February 4, 2005. [See Administrative Record ("AR") at 94.] He has a tenth grade education, and no relevant past work experience over the last 15 years. [AR at 20, 102, 105.]

On July 10, 2003, plaintiff protectively filed an application for Supplemental Security Income payments,[1] alleging disability due to diabetes, neck problems, a "plate" in his arm, poor vision, and an inability to read. [AR at 20, 101.] He claimed he has been unable to work since September 1, 1998. [AR at 101.] After his application was denied initially and on reconsideration, plaintiff was afforded a hearing before an Administrative Law Judge ("ALJ") on September 1, 2004, at which plaintiff appeared with counsel and testified on his own behalf. A vocational expert also testified. [AR 26-48.] On January 28, 2005, the ALJ concluded that plaintiff is capable of performing light work,[2] with no working around hazards, and that there are a significant number of jobs in the national economy that he can perform. [AR at 19-25.] Accordingly, the ALJ found plaintiff not disabled. [Id.] On November 23, 2005, the Appeals Council advised that the ALJ's decision would stand as the final decision in plaintiff's case. [AR at 4-7.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] Plaintiff previously filed an application on September 13, 2002, that was denied on November 26, 2002. The Administrative Law Judge reopened that application. [AR at 19.]

[2] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

Applying the five-step sequential evaluation process, the ALJ found no evidence that plaintiff had engaged in substantial gainful activity since 1987. [AR at 24.] At steps two and three, the ALJ concluded that plaintiff has severe impairments consisting of "cervical disc disease, status post removal of disc and possible fusion of cervical spine, with limited range of motion, history of diabetes mellitus with no end-organ effects, hypertension, and status post plate insertion in the left forearm bone secondary to fracture of the left forearm," but that the impairments do not meet or equal any impairment in the Listing. [AR at 22, 24.] At steps four and five, the ALJ concluded that plaintiff has no past relevant work, but has the residual functional capacity ("RFC")[3] to perform the full range of light work, reduced by an inability to work around hazards. [AR at 24.] Using the Medical-Vocational Rules as a framework (20 C.F.R., Pt. 404, Subpt. P, App. 2), the ALJ then

---

[3]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

found that a significant number of jobs exist in the national economy that plaintiff can perform. Accordingly, the ALJ found plaintiff not disabled. [AR at 24-25.]

## V.
## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to satisfy his burden that plaintiff was literate. For the reasons explained below, the Court remands this matter for further proceedings.

In his decision, the ALJ noted that plaintiff testified that he is "unable to read, as he has never learned to read." [AR at 22.] Based on plaintiff once having a driver's license, the ALJ concluded that "it appears [plaintiff] was capable of reading and passing a written California driver's license exam prior to 1980," and that it is "questionable" whether he is illiterate. Using Rule 202.10 of the Medical-Vocational Rules, the ALJ concluded that plaintiff is not disabled. [AR at 23.]

Plaintiff argues that since the ALJ found that plaintiff has no past relevant work, the burden shifted to the Commissioner to show that he can perform other substantial gainful work that exists in the national economy. Joint Stipulation at 4. Further, it was the ALJ's burden to show that plaintiff is literate, and to fully and fairly develop the facts relating to his claim for benefits. Joint Stipulation at 5. As the ALJ "merely speculated" that plaintiff could read, and did not further develop the record, plaintiff contends that remand is warranted. Id.

At step five of the sequential analysis, the burden is with the Commissioner to establish that there are a significant number of jobs in the national economy that plaintiff can do, despite his limitations. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). This can be shown either through the testimony of a vocational expert, or by reference to the Medical-Vocational Guidelines at 20 C.F.R., Pt. 404, Subpt. P, App. 2. Id. at 1101. The Guidelines (or "grids") present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. Tackett, 180 F.3d at 1101. The grids categorize jobs by their physical-exertional requirements and present various combinations of factors, e.g., age, education, and work experience, which are relevant to a claimant's ability to find work. Id. For

each combination of factors, the grids "direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." Id.[4]

The determination of whether or not plaintiff is literate is thus vital in this action, as the grids direct a finding of "disabled" if he is not literate and "not disabled" if he is literate. See Medical-Vocational Rules 202.09 and 202.10. By utilizing Rule 202.10, the ALJ found plaintiff literate. The record, however, contains numerous assertions that plaintiff cannot read. [See AR at 90 ("can't read"); 100 (checks boxes in September, 2002, that he cannot read English and cannot write more than his name in English); 113 ("claimant could not read"); 140 (checks boxes in July, 2003, that he cannot read English and cannot write more than his name in English); 150 (claimant said he can't read, and does not know if he has a learning disability); 154 ("I cannot read").] Plaintiff testified at the hearing that he cannot read, and that he never learned to read. [AR at 36.] Possibly as a follow-up to this statement, the ALJ asked plaintiff who filled out the forms he submitted for benefits. Plaintiff said that he had someone fill them out for him. [AR at 39.] The ALJ did not follow-up on this response, and has not pointed to any specific evidence that would show otherwise. Indeed, the only question asked by the ALJ concerning plaintiff's claimed inability to read is if he can read addresses. Plaintiff responded that he cannot. [AR at 45.] The ALJ did not ask plaintiff for any additional evidence concerning his ability to read.

In placing the burden on the Commissioner, plaintiff relies in part on the Ninth Circuit's decision in Silveira v. Apfel, 204 F.3d 1257, 1261 (9th Cir. 2000), in which the Court stated that "[t]he Commissioner bears the burden of establishing that [plaintiff] is literate." Defendant argues that this language is dictum, and that "it is not unreasonable to require that the claimant, who is in a better position to provide information about his education, to produce persuasive evidence

---

[4] If the grids direct a finding of disabled, that finding must be accepted by the Commissioner. Lounsburry v. Barnhart, ___ F.3d ___, 2006 WL 2684480, *4 (9th Cir. Sept. 20, 2006) ("where a person with exertional and non-exertional limitations is 'disabled' under the grids, there is no need to examine the effect of the non-exertional limitations. . . . Under no circumstances may a vocational expert's testimony supplant or override a disability conclusion dictated by the Guidelines."). (Id.)

6

1 supporting contentions such as illiteracy." Joint Stipulation at 8. Defendant then notes other
2 evidence in the record from which the ALJ could "reasonably infer" that plaintiff is literate. Joint
3 Stipulation at 9.  But the Court's review is limited to the reasons actually cited by the ALJ in
4 support of his determination.  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We
5 are constrained to review the reasons the ALJ asserts. . . . It was error for the . . . court to affirm
6 the ALJ's . . . decision based on evidence that the ALJ did not discuss.") (citing Pinto v.
7 Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)).  The only reason provided by the ALJ in the
8 instant case to find plaintiff literate concerned his ability to obtain a driver's license over 20 years
9 earlier.

10       Whether the burden to prove illiteracy rests with plaintiff or with the Commissioner, it is
11 clearly an ALJ's duty to develop the record when there is "ambiguous" evidence or when the
12 record is "inadequate" to allow for proper evaluation of the evidence.  Tonapetyan v. Halter, 242
13 F.3d 1144, 1150 (9th Cir. 2001); see 20 C.F.R. §§ 404.1512(e), 416.912(e); Mayes v. Massanari,
14 276 F.3d 453, 459-60 (9th Cir. 2001).  Here, the ALJ plainly concludes that it is "questionable" if
15 plaintiff is illiterate, i.e., it is not certain.  The only stated support for the ALJ's ultimate conclusion
16 that plaintiff is literate is plaintiff's possession of a driver's license over 20 years ago, from which
17 the ALJ infers an ability to pass a test, and thus an ability to read.  But the ALJ did not inquire into
18 how plaintiff obtained that license, or even whether he had to read to take the licensing test.
19 Neither did the ALJ follow up on plaintiff's statements that someone else filled out his disability
20 forms, and that plaintiff cannot read addresses.  No further evidence concerning plaintiff's ability
21 to read was sought by the ALJ. Speculation of the sort relied on by the ALJ to reach his
22 conclusion, and a concession by the ALJ that the evidence concerning plaintiff's illiteracy is
23 "questionable," creates the sort of ambiguity that should have triggered further inquiry by the ALJ,
24 and development of the record into this critical issue.  Remand is warranted.

25 /
26 /
27 /
28 /

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to fully develop the record as to whether or not plaintiff is literate. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: October 17, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE